**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                                            :

THE KEITH HARING FOUNDATION INC. &amp;   :
KEITH HARING STUDIO, LLC             :
                                            :

              Plaintiff,           :      Civil Action No. _____ (____)
                                            :

                 v.                  :      JURY TRIAL DEMANDED
                                            :

GIN&amp;TONIC LLC.,                 :
                                            :

              Defendant.         :
                                            :
------------------------------------------------------------X

## COMPLAINT

      The Keith Haring Foundation Inc. ("Haring Foundation") and Keith Haring Studio, LLC

("Haring Studio") (collectively, "Plaintiffs"), by and through their attorneys, Ladas & Parry,

LLP, for their Complaint against Gin&Tonic LLC (hereinafter, "Defendant") alleges as follows:

## NATURE OF THE ACTION

      1.     This action arises out of Defendant's unauthorized use of Plaintiffs' valuable

intellectual property in Keith Haring's works and trademarks, which is causing irreparable injury

to Plaintiffs, to the goodwill and reputation of Plaintiffs' well-known, federally-registered

intellectual property, and to the public.

      2.     The Haring Foundation is the successor-in-interest to and owner of the intellectual

property of the world famous artist Keith Haring.  Haring Studio is authorized to grant licenses

with respect to Keith Haring's intellectual property on behalf of the Haring Foundation.

      3.     In 2018, Haring Studio entered into a license agreement with Defendant, granting

Defendant certain limited rights to use and reproduce certain approved trademarks, artworks, and

other images by Keith Haring (collectively, the "Haring Images") on or in connection with the manufacture, marketing, and sale of lounge pants, underwear, socks, and robes (the "License").

4.     The License included strict provisions to ensure all products produced and manufactured under the License met Plaintiffs' quality requirements and stringent standards, including, *inter alia*, types of authorized products, authorized brands, a multi-step approval process for products, labels and packaging, and marketing materials, and standards.

5.     Defendant manufactured, sold, and distributed unapproved and unauthorized products bearing Plaintiffs' Haring Images that were not approved by Plaintiffs as required by the License and that were expressly not authorized or permitted under the License, constituting a material breach of several provisions of the License and violation of Plaintiffs' valuable intellectual property rights under the Lanham Act and U.S. Copyright Act.

6.     Accordingly, Plaintiffs bring this action for trademark infringement, counterfeiting, unfair competition and false designation of origin under the Lanham Act, copyright infringement under the Copyright Act, breach of contract under New York law, and trademark infringement, dilution, and unfair competition under New York Law.

**THE PARTIES**

7.     The Keith Haring Foundation Inc. is a New York not-for-profit corporation with an address at 676 Broadway, 5th Floor, New York, New York 10012.

8.     Keith Haring Studio, LLC is a Delaware limited liability company with an address at 676 Broadway, 5th Floor, New York, New York 10012.

9.     Upon information and belief, defendant Gin&Tonic LLC is a New York limited liability company with an address at 37 West 37th Street, New York, New York 10018, and subject to the personal jurisdiction of this court.

2

## JURISDICTION & VENUE

10.     This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the common law of the State of New York.

11.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 & 1338 and Section 39 of the Lanham Act, 15 U.S.C. § 1121.  This Court has subject matter jurisdiction over Plaintiffs' related New York state and common law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1 & 2) and (c)(2).

## KEITH HARING & PLAINTIFFS' RIGHTS

13.     Keith Haring (1958-1990) was an American artist who achieved international recognition and fame between 1980-1989.

14.     In 1989, Keith Haring established the Haring Foundation.

15.     During his life, Keith Haring contributed his talents and resources to numerous causes, including conducting art workshops for children, creating logos and posters for public service agencies, and producing murals, sculptures, and paintings to benefit health centers and disadvantaged communities.  The Haring Foundation furthers this legacy by supporting not-for-profit organizations, concentrating its charitable donations to organizations that enrich the lives of underprivileged children and organizations that engage in education, prevention, and care with respect to AIDS and HIV infection.

16.     The Haring Foundation also maintains and protects Keith Haring's artistic integrity and legacy, including overseeing the reproduction of Haring Images and protecting its intellectual property.

17.     The Haring Foundation has an active licensing program through Haring Studio. Revenues generated through licensing, as well as through sales of artworks, fund the Haring Foundation's support of not-for-profit organizations.

18.    The Haring Foundation owns and exclusively controls the common law rights and goodwill and U.S. trademark registrations for, *inter alia*, the following trademarks:

| Mark | Reg. No. Reg. Date | Class & Goods/Services (First Use in Commerce) |
|---|---|---|
|  | **2,513,868** Dec. 4, 2001 | Class 25: "Clothing, namely t-shirts, sweatshirts, caps, jackets and ties" (1980). Additional goods in classes 9, 14, and 16. |
|  | **3,532,980** Nov. 18, 2008 | Class 25: "Clothing, namely, t-shirts, tank tops, sweat shirts, sweat pants, shorts, hats, caps, jackets, scarves, raincoats, windbreakers, socks, shoes, boots, slippers, sandals, booties, belts, baby bibs not made of paper, rompers, and baby hooded sacks, namely, swaddling clothes and cloth infant wraps" (Dec. 1983). Additional goods in classes 26 and 28. |
|  | **2,413,748** Dec. 19, 2000 | Class 25: "Clothing, namely t-shirts, sweatshirts, caps and jackets" (1978) Additional goods in classes 9, 16, and 18. |
| **KEITH HARING** | **2,413,749** Dec. 19, 2000 | Class 25: "Clothing, namely t-shirts, sweatshirts, caps, ties and jackets" (1986) Additional goods in classes 16 and 26. |

(collectively, the "Haring Trademarks").  Each of the Haring Foundation's aforementioned federal registrations for the Haring Trademarks is valid, subsisting, and in full force and effect, and has become incontestable pursuant to 15 U.S.C. § 1065.  True and correct copies of the trademark registrations for the Haring Trademarks are attached at **Exhibit 1**.

19.    The Haring Foundation owns and exclusively controls numerous copyrighted works, including, *inter alia*, the following copyright registrations:

| Title | Reg. No. |
|---|---|
| Radiant Child | VA 173-256 |
| Figure Pattern #4 | VA 1-212-389 |

4

(collectively, the "Haring Copyrights"; and, together with the Haring Trademarks, the "Haring Intellectual Property").  Haring Copyrights that were registered by Keith Haring or the Estate of Keith Haring were assigned to the Haring Foundation when the Estate of Keith Haring was wrapped up in 2008, and said assignment was recorded with the Copyright Office in 2009.  True and correct copies of the copyright registration and deposit for the Haring Copyrights are attached at **Exhibit 2**.

20.     As a result of Keith Haring's renown, legacy, the distinctive and recognizable nature of his art and widespread use and marketing of same, the Haring Intellectual Property rights are strong, famous, and distinctive, and uses of the Haring Intellectual Property, including any works or products bearing Keith Haring's name, signature, and/or distinctive figures such as, e.g., the Baby and Radiant Baby, are immediately recognized by the public as originating with Keith Haring and/or authorized by Plaintiffs.

## DEALINGS WITH DEFENDANT

21.     Haring Studio is authorized to license Haring Intellectual Property and Haring Images on behalf of the Haring Foundation.

22.     Haring Studio entered into a license agreement with Defendant dated as of June 1, 2018.  A copy of the License is attached at **Exhibit 3**.

23.     Under the License, Haring Studio granted Defendant certain limited rights to reproduce Haring Images on or in connection with lounge pants, underwear, socks, and robes only.

24.     Products under the License could be manufactured, marketed, and sold solely in connection with the brands Keith Haring, Gin&Tonic, and Bottoms Out.

25.     The License included a strict approval process to maintain the integrity of the Haring Intellectual Property and Haring Images:

*Approval Process.* Licensee shall consult in advance with Grantor with respect to the design, colorways, layout, and (if applicable) text of each Product design, and shall furnish Grantor, for its review and approval, a sample of each design of each Product at each of its consecutive stages of development (a "Stage Sample"). Unless Grantor otherwise agrees in writing, such review and approval shall apply to such stages as (i) conception; (ii) initial layouts, sketches, and/or design renderings; (iii) drafts, preliminary samples, preliminary proofs, and/or counter samples; and (iv) final Production Samples (that is, the Product in the final form that will be marketed and sold to the public); provided however, that any approval by Grantor of a Production Sample shall be deemed an approval of each related Stage Sample. In order for the applicable Stage Sample to be deemed approved, Licensee shall make all corrections, revisions and/or changes that Grantor reasonably requests.

*Approval Period.* Grantor shall have 10 business days after receipt of the applicable approval materials for each Stage Sample to review such materials and provide Licensee with written notice of any changes required. Unless such notice is received within said period, the Stage Sample shall be deemed to be approved.

(the "Approval Process").  License, Paragraph 5(a-b).

26.     All products produced under the License, as well as their labels, packaging, and marketing materials, were subject to the Approval Process.

27.     The Approval Process was essential, as the License expressly made plain:

It is of the essence of this Agreement that Licensee shall not sell any Product unless and until Grantor has approved the Stage Sample for the final form in which the Product will be marketed and sold to the public.  The License will not take effect with respect to the sale of any Product unless and until such approval has been granted with respect to such Product as set forth herein.

License, Paragraph 5(c).

28.     The License also included standards that each product created thereunder must meet, including requiring that "[t]he Product shall be of high quality, with each Image thereon faithfully reproduced"; and "[t]he Product, and/or its packaging or labeling, shall bear, adjacent to each Image reproduced thereon, such credit line and text as Grantor reasonably specifies." License, Paragraph 5(d).

29.     The strict Approval Process, standards, and other requirements were in place to maintain the artistic integrity and high quality of goods associated with the valuable Haring Intellectual Property and Haring Images and are essential to preserving their commercial value and appeal.

30.     Plaintiffs' licensing agent Artestar, LLC ("Artestar") worked on behalf of Haring Studio with Defendant throughout the Approval Process.

31.     Throughout the Approval Process, Haring Studio strictly required Defendant to reproduce the Haring Images faithfully, without cropping, changing, or combining Haring Images.

32.     Between June 1, 2018, and February 15, 2019, several products went through the Approval Process.  During this period, several product design and label renderings were approved.  One sock preproduction sample was approved.  No final Production Samples were provided to Haring Studio for approval.

33.     In an email dated January 17, 2019, Defendant approached Artestar about a possible opportunity with the retailer Fashion Nova.

34.     In an email dated January 23, 2019, Defendant provided a "preview" of products it had in mind to propose for Fashion Nova.  Several of the proposed products, however, fell outside the scope of the License.  Artestar responded on even date as follows:

> Typically with retailer specific opportunities, like this one, that are outside the scope of the existing licensing agreement, we will have the licensee approach the retailer and gauge interest/receive a loose buy before proceeding. You can send those designs to Fashion Nova to gauge interest, so long as you include the disclaimer "Pending approval by licensor". Since we will be amending the agreement to include t-shirts, hoodies, bottoms, leggings, etc. I will need to better sense of the total opportunity here before proceeding[.]

35.     In an email dated January 24, 2019, Defendant provided projections for a possible opportunity with Fashion Nova.  The projections listed several product categories that fell

outside the expressly permitted uses authorized under the License.  In response thereto on even date, Artestar asked Defendant to provide rough price points for the proposed products.

36.     In an email dated March 14, 2019, Defendant re-sent the Fashion Nova "preview" and asked Artestar if Defendant could create samples of products upon Fashion Nova's request. Defendant noted that it would be able to provide a minimum guarantee thereafter.

37.     In an email dated March 18, 2019, Artestar allowed Defendant to sample some, but not all, of the clothing designs that Defendant had proposed for Fashion Nova, specifically noting that any removed products were "not OK to sample" and that "there may be minor changes to the designs, and they will still have to go through a standard design approval process if a buy is confirmed."

38.     A buy was never confirmed.

39.     Defendant never provided a minimum guarantee as promised on March 14, 2019, which was a pre-condition to any amendment of the License for the Fashion Nova opportunity.

40.     Defendant never provided the price points requested by Artestar on January 24, 2019.

41.     Months later, in an email dated September 26, 2019, Defendant noted that "Fashion Nova wants to do a holiday program."  Artestar responded on even date that it would speak with the Haring Foundation about the Fashion Nova opportunity.

42.     No agreement to amend the License was ever reached between Defendant and Haring Studio to license use of Haring Images and Haring Intellectual Property for goods that fell outside the scope of the License.

43.     The License requires amendments to the License to be in writing and signed by the party against whom enforcement is sought.

44.     No written, executed amendment of the License was ever entered into.

45.     Plaintiffs never approved a Fashion Nova opportunity, nor any use by Defendants of Haring Images and Haring Intellectual Property in connection with products falling outside the permitted goods expressly set forth in the License.

46.     Defendant tendered the first guaranteed payment under the License on June 29, 2018, and the second minimum guaranteed payment under the License on September 12, 2019, both of which Defendant was required to make, irrespective of whether Defendant had any sales of products under the License.

## PLAINTIFFS' DISCOVERY OF DEFENDANT'S MATERIAL BREACH OF THE LICENSE

47.     On or about November 6, 2019, Plaintiffs identified an unauthorized robe bearing Haring Intellectual Property for sale and available for purchase on the Urban Outfitters website.

48.     Prior to this discovery, only one preproduction sample for one sock design had been approved under the Approval Process.  For products in other categories (lounge pants, underwear, robes), only design renderings had been approved; no samples had been submitted for approval.  No final Production Samples of products, packaging, or labels, and no marketing materials had been submitted for approval.

49.     The License also required Defendant to provide Haring Studio ten (10) Production Samples of each product created under the License.  Haring Studio never received any such Production Samples.

50.     Upon information and belief, Defendant sold and distributed unauthorized and unapproved products bearing Haring Intellectual Property and Haring Images to the retailer Urban Outfitters for more than a year.

51.     Upon information and belief, Defendant sold and distributed unauthorized and unapproved products bearing Haring Intellectual Property and Haring Images to the retailer DTLR without Plaintiffs' approval.

52.     Upon information and belief, Defendant sold and distributed unauthorized and unapproved products bearing Haring Intellectual Property and Haring Images to the retailer Fashion Nova without Plaintiffs' approval.

53.     Artestar emailed Defendant on November 6, 2019, concerning the Urban Outfitters robe, noting that Defendant "never sent pre production samples" and that Artestar and Haring Studio "need to see samples before [Defendant] go[es] to market[.]"

54.     Defendant replied: "I do apologize.  Will make sure future orders do go through your office before hitting market."

55.     In response, Artestar inquired, "[i]s there anything else that's coming out to market we haven't seen? Can you confirm?" and also asked Defendant to send Artestar the Urban Outfitters robe for inspection.

56.     Defendant promised to walk over a robe to Artestar's offices in the afternoon of November 6, 2019, but failed to do so.

57.     In the morning of November 7, 2019, Defendant emailed Artestar, asking "to chat" and also inquiring about an opportunity with another artist's estate represented by Artestar. At approximately 1:15 pm, Artestar responded: "my president isn't going to let me do anything else with Ezrasons until we address the robe issue and what else is headed to market that we didn't see preproduction samples of[.]"

58.     Upon information and belief, Ezrasons is Defendant's corporate parent.

59.     Shortly thereafter on November 7, 2019, at approximately 3:03 pm, Defendant made an unscheduled visit to Artestar, bringing the unauthorized robe that was already being sold to consumers at Urban Outfitters, as well as several other unauthorized clothing items that had already been manufactured and sold to the retailer Fashion Nova (the "November 7 Meeting").

60.     The products presented at the November 7 Meeting were not stage samples for approval, but rather unauthorized products that had already been sold and distributed by Defendant to retailers and were already or would soon be available for sale by retailers to consumers.

61.     Defendant expressly confirmed during the November 7 Meeting that unapproved products bearing Haring Intellectual Property and Haring Images presented at the meeting had already been sold to the retailers.

62.     All of the presented products bore labels and hangtags with prices and barcodes.

63.     The Urban Outfitters robe presented at the November 7 Meeting bore Keith Haring labels and Keith Haring and Urban Outfitters hang tags.

64.     A design rendering for a robe bearing the same Haring Intellectual Property had been approved, but a preproduction sample and final Production Samples were never provided to Haring Studio for approval.

65.     The nonconforming Urban Outfitters robe presented by Defendant at the November 7 Meeting materially differed from the approved design rendering in several ways. The design rendering had a hood, black trim around the hood and down the front of the robe and at the wrists, bore the KEITH HARING signature across the black trim on the hood, and bore the KEITH HARING signature on both of the ends of the robe tie belt, which was black.  The

presented non-approved robe had a collar instead of a hood, no black trim, no KEITH HARING

signatures, and the robe tie belt was the same colorful print as the robe instead of solid black.

66.     None of the Fashion Nova products presented by Defendant at the November 7

Meeting went through the standard design Approval Process set forth in the License that would

have been required if a buy had been confirmed, as Artestar specifically noted on March 18,

2019, and the License was never amended to permit a Fashion Nova retailer-specific

opportunity.

67.     The Fashion Nova products included an unauthorized jacket, t-shirts, and

sweatshirts, none of which were permitted by the License.

68.     Several of the Fashion Nova products corresponded to designs Artestar had

already specifically rejected as "not OK to sample" on March 18, 2019.

69.     The Fashion Nova products impermissibly bore Fashion Nova Men brand labels

and hang tags.

70.     Fashion Nova Men is not an approved brand under the License.

71.     The Fashion Nova products did not bear the required copyright notice.

72.     The Fashion Nova products did not meet the standards set forth in the License.

73.     During the November 7 Meeting, Artestar advised Defendant that Haring Studio

never approved the Fashion Nova opportunity or the Urban Outfitters robe, and all of the

products presented breached the License.

74.     In a letter dated November 7, 2019, but sent to Defendant on November 8, 2019

by email at 3:50 p.m. and by UPS, and delivered by UPS at 11:22 am on November 12, 2019,

Artestar advised Defendant that it was in material breach of the License due to its manufacture

and marketing of unauthorized products bearing Haring Images and Haring Intellectual Property

(the "Unauthorized Products") "either because they were never submitted for the Studio's review and approval (as required under Section 5 of the Agreement) and/or because they fall into product categories other than those stated in Exhibit A of the Agreement" (the "November 8 Correspondence").

75.     The November 8 Correspondence was sent following and in response to the November 7 Meeting.

76.     All of the products presented during the November 7 Meeting had never been submitted for Haring Studio's approval per the Approval Process, and many additionally fell into product categories not authorized by the License, and thus all constituted Unauthorized Products as referenced in the November 8 Correspondence.

77.     In view of Defendant's material breach of its obligations, Artestar demanded that Defendant immediately "[c]ease and desist from any further development, manufacture, promotion, marketing, sale, or distribution of all Unauthorized Products" and "[d]estroy all units of the Unauthorized Products and provide satisfactory evidence of destruction, such as a customary certificate of destruction," in addition to providing certain information regarding the amount of Unauthorized Products and damages.

78.     The November 8 Correspondence further noted that the Unauthorized Products constitute trademark infringement, copyright infringement, and/or unfair competition.

79.     Defendant was expressly on notice that all of the products presented during the November 7 Meeting must be removed from manufacture, promotion, marketing, sale, and distribution and destroyed, as they violated Plaintiffs' exclusive rights in and to the Haring Intellectual Property and Haring Images.

80.     Defendant never cured its material breach of the License.

81.     Rather, on or about December 1-3, 2019, Plaintiffs discovered that some or all of the Unauthorized Products presented by Defendant at the November 7, 2019 meeting, as well as additional unauthorized products that had never been approved by Haring Studio, had been sold and distributed to Urban Outfitters and Fashion Nova and were being marketed and were available for sale to consumers on the retailers' websites.

82.     To the extent the products presented during the November 7 Meeting had not already been knowingly impermissibly brought to market prior to that meeting, they were knowingly and willfully brought to market shortly thereafter, at least by December 3, 2019, despite Plaintiffs' written objection thereto.

83.     In a letter dated December 3, 2019, outside counsel for Plaintiffs reiterated that Defendant was in material breach of the License and demanded that Defendant cease all distribution, sale, marketing and promotion of the Unauthorized Products and cause its distributors, retailers, and customers to do the same; remove all marketing for Unauthorized Products; provide information concerning the amount of Unauthorized Products; and destroy any remaining Unauthorized Products, in addition to demanding damages (the "December 3 Breach Letter").  The letter further noted that the Unauthorized Products constitute trademark infringement, copyright infringement, and violation of other laws such as § 43(a) of the Lanham Act.

84.     Given Defendant's previous willful continued intransigence, on December 3, 2019, Plaintiffs, through outside counsel and Artestar, also took reasonable necessary steps to mitigate the damage caused by the continuing willful violation of Plaintiffs' exclusive rights in and to the valuable Haring Intellectual Property and Haring Images and contacted Urban

Outfitters and Fashion Nova directly to request they discontinue selling the Unauthorized Products.

85.     Defendant never took any steps to cure its material breach of the License.

86.     To the contrary, following receipt of the December 3 Breach Letter, in an email dated December 6, 2019, Defendant, through its outside counsel, implausibly advised outside counsel for Plaintiffs that Fashion Nova was trying to re-order Unauthorized Products and that orders for Unauthorized Products that had been cancelled by Urban Outfitters were ready to ship, and Defendant's counsel requested that Plaintiffs' counsel approve further orders and shipments of Unauthorized Products to Fashion Nova and Urban Outfitters.

87.     Defendant had been on express written notice of its material breach of the License since as early as November 8, 2019, and failed to cure same within 10 business days of receipt of written notice thereof.

88.     Accordingly, in a letter dated December 20, 2019, Haring Studio terminated the License more than 10 business days following Defendant's receipt of written notice of its material breach.

89.     Defendant commenced its Unauthorized Use of the Haring Intellectual Property and Haring Images willfully and in bad faith, with actual knowledge of Plaintiffs' exclusive rights thereto and in derogation thereof, so that Defendant could trade on and receive the benefit of Plaintiffs' considerable recognition, goodwill, and reputation, without regard to the agreed upon terms of the License or Plaintiffs' exclusive ownership rights in the Haring Intellectual Property and Haring Images.

90.     Plaintiffs have no adequate remedy at law and will be irreparably harmed unless Defendant is restrained by this Court from continuing its infringing use.

## COUNT I

### Federal Trademark Infringement and Counterfeiting
### 15 U.S.C. § 1114

91.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 90 above.

92.     The Haring Foundation is the exclusive owner of valid and subsisting trademark rights in the United States to the Haring Trademarks, including incontestable Trademark Registration Nos. 2,513,808, 3,532,980, 2,413,778 and 2,413,749 for, *inter alia*, clothing goods, and such registrations provide constructive notice of Plaintiffs' ownership thereof pursuant to 15 U.S.C. § 1072.  *See* **Exhibit 1**.

93.     Defendant is using and/or has used in commerce the Haring Trademarks on or in connection with clothing goods, including the Unauthorized Products, without Plaintiffs' consent.

94.     Defendant has manufactured, marketed, sold, and distributed inferior Unauthorized Products reproducing the Haring Trademarks that are expressly outside the scope of the License, in material breach thereof.

95.     Defendant's use of the Haring Trademarks on or in connection with clothing goods, including the Unauthorized Products, has caused and/or is likely to cause consumer confusion, mistake or deception, such that consumers are likely to believe that the Defendant's goods originate from Plaintiffs or are otherwise authorized, sponsored, approved, or endorsed by Plaintiffs.

96.     Defendant's use of the Haring Trademarks has caused and, unless enjoined by this Court, will continue to cause irreparable injury to Plaintiffs' goodwill and reputation as symbolized by the Haring Trademarks and confusion and deception amongst consumers.

97.     Defendant's use of the Haring Trademarks constitutes infringement and counterfeiting of the registered Haring Trademarks in violation of Haring Foundation's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for which Plaintiffs have no adequate remedy at law.

98.     Defendant has had, at all relevant times, actual and direct knowledge of Plaintiffs' prior use and exclusive ownership of the Haring Trademarks.

99.     Defendant's conduct is willful and reflects Defendant's intent to wrongfully exploit the goodwill and strong brand recognition and reputation associated with the Haring Trademarks.

100.    Defendant's actions have caused, and will continue to cause, substantial injury to Plaintiffs and to the public, and Plaintiffs are entitled to injunctive relief enjoining Defendant's use of the Haring Trademarks, including without limitation any manufacture, distribution, and sale of the Unauthorized Products, as well as to recover Defendant's profits, Plaintiffs' actual damages, treble damages, statutory damages, costs, and reasonable attorneys' fees, in an amount to be determined at trial, under 15 U.S.C. §§ 1114, 1116, and 1117.

101.    Defendant's infringing actions have been willful, deliberate and intended to benefit Defendant at Plaintiffs' expense.

102.    Accordingly, Plaintiffs are alternatively entitled to recover the maximum amount of statutory damages available under the 15 U.S.C. § 1117(c), namely $2,000,000 per type of goods sold, offered for sale, or distributed.

## COUNT II

### Federal Unfair Competition and False Designation of Origin
### 15 U.S.C. § 1125(a)

103.     Plaintiffs hereby incorporate by reference and reallege each and every allegation

set forth in Paragraphs 1 through 102 above.

104.     Defendant's unauthorized use in commerce of the Haring Trademarks and other

words, terms, names, and symbols, including the Haring Images, misleads the relevant

consuming public to believe that Plaintiffs have endorsed, sponsored, authorized and/or is

affiliated with Defendant and its goods, thereby creating a likelihood of confusion as to the

source, sponsorship or approval of Defendant's business, goods, and services.

105.     Defendant has had, at all relevant times, actual and direct knowledge of Plaintiffs'

prior use and exclusive ownership of the Haring Trademarks and other words, terms, names, and

symbols, including the Haring Images, used by Defendant on and in connection with the

Unauthorized Products.

106.     Defendant's actions have been willful, deliberate and intended to benefit

Defendant at Plaintiffs' expense.

107.     Defendant's activities constitute unfair competition and false designation of origin

in violation of Section 43(a) of the Lanham Action, 15 U.S.C. § 1125(a).

108.     Defendant's activities have caused and, unless enjoined by this Court, will

continue to cause a likelihood of confusion and deception of consumers, in addition to injury to

Plaintiffs' goodwill and reputation as symbolized by the Haring Trademarks and Haring Images,

for which Plaintiffs have no adequate remedy at law.

109.     Defendant's actions have caused, and will continue to cause, substantial injury to

the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and also to recover

Defendant's profits, Plaintiffs' actual damages, enhanced damages, costs, and reasonable attorneys' fees, in an amount to be determined at trial, under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III

### Copyright Infringement
### 17 U.S.C. §§ 101 *et seq.*

110.    Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 109 above.

111.    The Haring Foundation is the owner of all right, title, and interest in and to the registered Haring Copyrights, including the exclusive rights to reproduce, distribute, display or prepare derivative works of the Haring Copyrights, pursuant to 17 U.S.C. § 106 of the Copyright Act. *See* **Exhibit 2**.

112.    Defendant had access to the Haring Copyrights and reproduced, distributed and displayed same without authorization.

113.    Defendant's unauthorized use of the Haring Copyrights on or in connection with the Unauthorized Products without permission, in violation of the License, constitutes willful copyright infringement of Plaintiffs' exclusive rights in the Haring Copyrights.

114.    Defendant's unauthorized and unlicensed copying of the registered and protected Haring Copyrights causes irreparable harm, damage, and injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

115.    Defendant's actions have caused, and will continue to cause, substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief restraining Defendant from further infringing the Haring Copyrights and to recover their actual damages, disgorge

Defendant's profits, costs, and reasonable attorneys' fees, in an amount to be determined at trial, under 15 U.S.C. §§ 504 and 505.

116.    At all relevant times, Defendant has had actual and direct knowledge of the Haring Foundation's ownership of the Haring Copyrights and knew that Defendant was not authorized to use same except as set forth in the License.

117.    Defendant's infringing actions have been willful, deliberate and intended to benefit Defendant at Plaintiffs' expense.

118.    Accordingly, Plaintiffs are alternatively entitled to recover the maximum amount of statutory damages available under the Copyright Act, namely $150,000 per use of each work, without a showing of actual damages pursuant to 17 U.S.C. § 504(c).

**COUNT IV**

**Breach of Contract**

119.    Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 118 above.

120.    Per Paragraph 1, 1(a) and Exhibit A of the License, the License was expressly limited to four specific categories of products: lounge pants, underwear, socks, and robes.

121.    Per Paragraph 1 and 1(e), products under the license were limited to certain specific Authorized Brands: Keith Haring, Gin&Tonic, and Bottoms Out.

122.    Per Paragraph 5 of the License, the License set forth a strict Approval Process and standards for all products, labels and packaging, and marketing materials under the License.  It was "of the essence" of the License that Defendant "shall not sell any Product unless and until [Haring Studio] had approved the Stage Sample for the final form in which the Product will be marketed and sold to the Public" and the "License [did] not take effect with respect to the sale of

any Product unless and until such approval has been granted" via the Approval Process set forth in Paragraph 5 the License.

123.     Per Paragraph 12 of the License, all products under the License were required to bear a copyright notice.

124.     Per Paragraph 17 and Exhibit A of the License, Defendant was required to provide 10 units of each Product manufactured under the License "in the final form that will be marketed and sold to the public."

125.     Defendant's manufacture, marketing, sale, and distribution of Unauthorized Products in violation of the aforementioned Paragraphs of the License constitutes material breach of the License.

126.     Defendant was expressly advised in writing of its material breach of the License on November 8, 2019, and December 3, 2019, and failed to cure its breach.  The License was accordingly terminated following more than 10 business days' notice of said material breach pursuant to Paragraph 18(b) of the License.

127.     Haring Studio has fully performed all of its obligations under the License.

128.     By reason of the foregoing, Plaintiff Haring Studio has been damaged in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000).

## COUNT V

### Trademark Infringement, Dilution, and Unfair Competition under New York Law

129.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 128 above.

130.     Plaintiffs exclusively owns valid and subsisting common law rights and goodwill throughout the United States, and in particular in New York, to the Haring Trademarks for, *inter alia*, clothing goods.

131.    Defendant is using and/or has used the Haring Trademarks in New York on or in connection with the Unauthorized Products.

132.    Defendant's unauthorized use of the Haring Trademarks in New York on or in connection with the Unauthorized Products has caused and/or is likely to cause consumer confusion, mistake or deception, such that consumers are likely to believe that the Defendant's goods/services originate from Plaintiffs or are otherwise sponsored, approved or endorsed by Plaintiffs.

133.    Defendant's unauthorized use of the Haring Trademarks dilutes and is likely to dilute the distinctive quality of the Haring Trademarks by eroding the public's exclusive identification of the Haring Trademarks with Plaintiffs, and lessens and is likely to lessen the capacity of the Haring Trademarks to exclusively identify and distinguish Plaintiff's goods and services.

134.    Defendant's unauthorized, nonconforming, and unlawful use of the Haring Trademarks in connection with goods of an inferior quality is likely to tarnish and blur the positive reputation and distinctiveness of the Haring Trademarks as associated with Plaintiffs in the minds of consumers.

135.    Defendant's actions have caused, and will continue to cause, substantial injury to Plaintiffs' goodwill and reputation and dilution of the distinctiveness and value of the distinctive Haring Trademarks.

136.    Defendant's actions constitute trademark infringement, dilution, and unfair competition in violation of the laws of the state of New York, including without limitation, New York General Business Law §§ 360-l and 360-o.

137.    Defendant possessed, at all relevant times, actual and direct knowledge of Plaintiffs' prior use and ownership of the Haring Trademarks.

138.    Defendant's unauthorized and infringing use of the Haring Trademarks has been willful, deliberate, and made in bad faith, intended to benefit Defendant at the Plaintiffs' expense.

139.    Defendant's actions have been willful, deliberate, and made in bad faith, despite Plaintiffs' express written demands that Defendant cease its infringing use, intended to benefit Defendant at the Plaintiffs' expense.

140.    Plaintiffs have no adequate remedy at law and are entitled to injunctive relief and to recover actual damages in an amount to be determined at trial.

## PRAYER

WHEREFORE, Plaintiffs respectfully requests the following relief:

a.    That this Court enter judgment in favor of Plaintiffs on the Complaint;

b.    That Defendant, its directors, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with one or more of them, be preliminarily and permanently enjoined and restrained from:

   i.    using the Haring Intellectual Property and Haring Images or any colorable imitation or confusingly similar variation thereof, in connection with clothing goods, including without limitation the Unauthorized Products;

   ii.    falsely passing off Defendant's Unauthorized Products as originating from, being associated with, or authorized by Plaintiffs; and

iii.     otherwise engaging in acts of trademark infringement, copyright

infringement, unfair competition, false designation of origin, and

trademark dilution;

c.     That Defendant destroy all Unauthorized Products and provide a certificate of

destruction, or else deliver all Unauthorized Products to Plaintiffs for destruction at Defendant's

sole expense;

d.     That Defendant account for all sales and distribution (in units and dollars) of

products bearing Haring Intellectual Property and Haring Images and identify the purchasers and

recipients thereof at Defendant's sole expense;

e.     That Plaintiffs be awarded actual damages and disgorgement of profits in an

amount to be proven at trial;

f.     That Plaintiffs be awarded enhanced damages up to three times the amount of

actual damages pursuant to 15 U.S.C. § 1117(a);

g.     That Plaintiffs be awarded treble damages for use of counterfeit marks pursuant to

15 U.S.C. § 1117(b);

h.     That Plaintiffs be awarded the maximum statutory damages allowed for willful

use of counterfeit marks pursuant to 15 U.S.C. § 1117(c);

i.     That Plaintiffs be awarded the maximum statutory damages allowed for willful

copyright infringement pursuant to 17 U.S.C. § 504(c);

j.     That Plaintiffs be awarded their costs and reasonable attorneys' fees incurred in

this action, including pursuant to 15 U.S.C. § 1117(a) and (b) and 17 U.S.C. § 505; and

k.     Any other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs respectfully requests trial by

jury.

Respectfully submitted,

**LADAS & PARRY LLP**

Date:  March 5, 2020                    By:  _____

Ralph Cathcart (RHC2350)
Jennifer Kwon (JK0211)
1040 Avenue of the Americas
New York, New York 10018
(212) 708-1800

*Attorneys for Plaintiffs*
*The Keith Haring Foundation Inc. and*
*Keith Haring Studio, LLC*